The Honorable, the Judges, and the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Welcome to the United States Court of Appeals for the Fourth Circuit. We have three cases on for argument this morning. First up, 24-1467 Central Appalachian Coal Company v. DOWCP. Mr. Gregoracci, I hope I said that right. Yes, Your Honor. Whenever you're ready. Thank you. May it please the Court, Mark Gregoracci, for the petitioner, Central Appalachian Coal Company. Petitioners before this Court not asking that the Court re-weigh the medical evidence or try to resolve a battle of the experts. Petitioner is asking that this Court evaluate whether the Administrative Law Judge and Benefits Review Board provided sufficient reasoning for their decisions in this federal black loan claim and whether those decisions are in accordance with the law and supported by substantial evidence. This Court should ask whether the Benefits Review Board sufficiently explained their rationale for the decision. When this is done, this Court will find that the Benefits Review Board forced Central Appalachian Coal Company and its medical experts to explain away an irreversible residual pulmonary impairment that Mr. Estadillo does not have and wrongly imposed the burden on the employer to explain why coal dust exposure could not be a contributing factor to Mr. Estadillo's deferential. It's not toothless. As this Court recently observed in Extra Energy Inc. v. Lawson in 2025, an ALJ may not credit or discredit an expert medical opinion for no reason or the wrong reason. The Court is to ensure that all relevant evidence was considered and that the ALJ sufficiently explained their rationale. So when an analysis of the rationale of the ALJ and BRB Benefits Review Board is done in this manner, you'll find that they did not identify valid reasons for their decisions or for discrediting the employer's medical experts. The BRB erroneously claimed that the employer's experts did not adequately explain why Mr. Estadillo, who has 12 years of coal mine employment, does not have legal pneumoconiosis because they, quote, failed to adequately explain why the irreversible portion of claimant's impairment was not significantly related to or substantially aggravated by coal dust exposure. They also go on to state that the employer's experts failed to explain why, even if asthma can explain claimant's obstructive impairment, why is his asthma and resulting impairment not significantly related to or substantially aggravated by coal mine dust exposure. Was there any dispute that the claimant, in this case, in fact, suffered from asthma? There was no dispute about that, right? My friends on the other side may dispute it. I believe that the evidence is overwhelming that he has asthma, and in fact, if we were to look at the study cited by one of the experts for my friends on the other side, they would, it would confirm that this gentleman has asthma. He has reversibility. What is your position that, let's assume that even if they contested that there's some evidence in the record to support that, do you think that's fatal to the claim? No, that's not fatal to the claim. What is, one, it's clear he has asthma. Okay. What is fatal to the claim is that when he receives breathing treatment, bronchodilators, he has, prior to it, he has total pulmonary disability on pulmonary function tests, the objective data. When he receives this breathing test treatment, he gets complete reversibility and does not have total disability after the pulmonary function test. But it was only a partial, only partial relief, not complete irreversibility. Well, but the ALJ had identified and made the finding that prior to the breathing treatment, it's qualifying, which means it's disabling. After the breathing treatment, it's not qualifying, which means it's not disabling. It means it's not totally disabling, right? Correct. Right, but pneumoconiosis, I thought it didn't have to be totally disabling. It just had to meaningfully contribute to a total disability. That's correct. Okay. That is correct. There needs to be a meaningful or a substantial aggravation or contributing factor. Right, that's correct. But what we have here, and this court has identified, that the reversibility and substantial improvement such that this gentleman, no dispute, this gentleman in this case, Mr. Estadillo, when he has this breathing treatment, he has no total pulmonary disability. This court, in consolidation with Cole v. Swigert, found that there being a, with this reversibility and improvement, right, with there still being a residual disabling impairment, that is the key to identifying coal dust exposure as being a cause or contributing factor. In this case, this gentleman, he has asthma, not acquired through coal dust exposure. When he is given this breathing treatment, he goes from total disability to not total disability. I think it's Dr. Green and the ALJ considers this, that this improvement that you see could be treating the other symptoms, other related issues such as the asthma and not necessarily the coal dust exposure. We would disagree with that. Our experts had identified that this pattern and this improvement to being disabled to now being not disabled with this breathing treatment is what you would see and expect in asthma, unrelated to coal mine dust exposure. In addition, because you brought up Dr. Green, Dr. Green had cited to a study that shows that, that would support our position that Mr. Estadillo has asthma and his reversibility is diagnostic of asthma. Excuse me, this is at Joint Appendix, page 82. This is a study relied on by Dr. Green. Quote, reversibility of airway obstruction after inhalation of a bronchodilator drug is a hallmark in early asthma and has long been regarded as a criterion to distinguish asthma from COPD. That's what our experts say. Well, let me stop. I'm sorry to interrupt you, but that's the point. That's what your experts say. And you started off your argument with a statement that this is not necessarily a battle of the experts, but that the evidence appears to be conclusive that the claimant in this case no longer suffered a disabling condition after being treated. But that's the view of your experts. There's the view of the other experts and one in particular, Dr. Brashida, who, relying on testing results, said that the impairment in this case, even after the treatment of bronchodilators, was only partially reversible. So we have that evidence in the record. So what are we supposed to do in this case when you've got this conflicting evidence, the ALJ weighed the evidence and ruled adversely to your client? Isn't that exactly what's supposed to happen in this case? And why are we in any better position to contradict that finding? Your Honor, I'm glad that you asked about Dr. Brashida and this reversibility. There was never a finding by the administrative law judge or by the Benefits Review Board that Dr. Brashida failed to explain the irreversible portion of pulmonary impairment. That was a finding. And, of course, as this Court understands, under the Chenery Doctrine, this Court only looks to the reasons cited by the Benefits Review Board for its decision. So here, the Benefits Review Board claimed that the ALJ was correct to discredit Dr. Brashida for purportedly failing to explain this irreversible portion of Mr. Estadillo's impairment. In fact, the Benefits Review Board could not even cite a portion of the ALJ's decision where the ALJ made that finding. This is confirmed if we were to look at Joint Appendix 208. That's the Benefits Review Board decision in which they claim that, as the ALJ, quote-unquote, noted, Dr. Brashida and Dr. Zaldivar didn't explain this irreversible portion of impairment. But they do not cite to, and there is nothing in the ALJ's decision, finding that Dr. Brashida did not explain or discrediting Dr. Zaldivar or, excuse me, Dr. Brashida for purportedly failing to explain the irreversible portion of impairment. Well, is there a difference between failing to explain why a particular expert is wrong and, as the ALJ apparently did in this case, relying, finding the set of experts who testified for the claimant more reliable and believable? In this case, no, because what we're looking at here, according to the administrative law judge, Dr. Green, Dr. Habre, those are the experts on the other side. Well, they are credible. They're more reliable because they rely on symptoms, work history, and objective data. Dr. Zaldivar and Dr. Brashida relied on symptoms, work history, and objective data. How do we distinguish and discern which one is more or less reliable? It's a standard without any meaning. More to my point, Dr. Brashida and Dr. Zaldivar, they rely on the same criteria, the same factors that the ALJ, excuse me, administrative law judge, believed made Dr. Habre and Dr. Green reliable. That same analysis, that same standard should have been applied to the employer's experts. They had given the same analysis, relied on the same objective data, and the objective data here does show, without question, pre-breathing treatment, disability. After the breathing treatment, there's no disability. I guess, I mean, maybe this is semantic, but it doesn't show, it shows no total disability. You no longer hit the qualifying level of impairment where you count as totally disabled after treatment. But it still shows that there is some residual portion of this impairment that does not respond to the treatment. And I'm just not understanding, I guess just as like a matter of common sense, that sounds like there's a residual condition that sounds more like pneumoconiosis because it can't be reversed. Why does it matter that after the treatment there is not a total disability so long as there is still an irreversible impairment? Judge Harris, that's an excellent question, and the answer I will provide was given by this court in 2004. In consolidation coal v. Swiger, and here's the quote, the presence of the residual fully disabling impairment suggested that coal mine dust was a contributing... Right, that would certainly be sufficient, but there is nothing in that case that says if it is not totally disabling after the treatment, it can't be pneumoconiosis. It says what is sufficient. It doesn't say what is necessary. I just, I'm just struggling to figure out why it matters that post-treatment we're no longer looking at a totally disabling condition. That the residual portion of the impairment that cannot be reversed is not totally disabling. I'm going back to Swiger, and Swiger didn't talk about the phrasing what was sufficient. Swiger identified that the residual disabling impairment is key, but we're looking beyond this. We're talking about reversibility and improvement with bronchodilators is a specific finding that weighs against black lung, legal pneumoconiosis. This has been addressed by this court. Just so I'm clear, your position is that if a respiratory impairment is partially but not completely reversible, that excludes pneumoconiosis? That is inconsistent with legal pneumoconiosis? Judge Harris, I don't want to rule like that. It sounds like that's what you're saying. What I'm saying in this case is this gentleman has asthma. He has reversibility. He has improvement. He has improvement to the point that he's no longer totally disabling. If we look at what this court had held in Fox, X-Rel, Fox, V-Elk, a non-run coal company in 2014, reversibility and improvement with bronchodilators are significant factors weighing against a pneumoconiosis diagnosis because black lung is typically irreversible. This gentleman's condition can improve and reverse to the point that he's no longer disabled, which is how asthma unrelated to coal mine dust exposure should behave. But if we look at the regulations, his is not dispositive. I'm not? It's not dispositive, the fact that he's having the improvement, right? I don't want to rule that it's dispositive. I'm citing to this court's precedent dating back to 2004 and 2014 that these are relevant criteria. The Benefits Review Board and the Administrative Law Judge tell me that it's not relevant. It would only be relevant if you could eliminate it completely. The standard that they want is that if there is any reversibility, it doesn't matter. But this court has identified in 2014. I didn't get that out of the ALJ and the board decision. They're all about the partial reversibility. I think they do account for that. You're suggesting that the agency here applied like a bright-line rule that if there is any residual impairment, that necessarily means you have legal pneumoconiosis? I believe that's the approach that they're taking because they have instructed or they're holding the employer to the standard to explain away a residual pulmonary disability that does not. I think they're just saying that once the claimant comes forward with evidence, they need to rebut it, that you can't really credit an opinion that doesn't actually address what the claimant is saying. Except, Your Honor, there is no obligation to rebut. This is not a 15-year presumption case. No, not a presumption, evidence. The claimant comes in with evidence from his expert saying just because there's partial reversibility doesn't mean you don't have legal pneumoconiosis. And then the ALJ says the company's experts just don't address the way that coal dust and asthma can kind of interact to cause problems. Though that's an incorrect assessment because from the Administrative Law Judge and the Benefits Review Board, first of all, the Benefits Review Board created this finding and applied it to Dr. Rashida. It doesn't exist. Secondly, the employers' experts did explain it. There's nothing that would be quote-unquote adequate to the Benefits Review Board because the reversibility, according to them, is immaterial. Our experts explained, relying on Swiger as well, the absence of a fully disabling residual impairment after bronchodilators is what you would expect with asthma. There are other factors, but that is what you would expect with asthma unrelated to, meaning it's not caused by, not significantly contributed to by coal mine dust exposure. When we look at what the Administrative Law Judge felt was reasonable, rational, cogent opinions from the experts on the other side, they rely on symptoms, work history, and objective data. That is the same criterion, same fund of evidence that the employers' experts relied on. However, the employers' experts cannot be credible, cannot be reliable, unless they meet this additional burden and this additional hurdle of explaining away something that didn't exist. So just so I understand your point, you're making a distinction between residual impairment and disability? Those are two different concepts in your mind? Yes. I do think that those are two different concepts. And what you're suggesting is that because the claimant in this case, after being treated with bronchodilators, gets sufficiently better, such that although he might have an impairment, it's not necessarily disabling? Is that your point? The point is looking at Swiger and looking at this absence of a fully residual disabling impairment, which this Court felt and identified was quite relevant to attributing the impairment to coal dust exposure. Mr. Estadillo does not have the fully disabling residual impairment. Does he have an impairment? My friends on the other side may say that he does. I thought your own expert said that he does. Didn't Beshida say that there was only partial reversibility, there's still some impairment? He identified that there was some partial reversibility, yes. All right, thank you very much. Thank you. Mr. Blair? Thank you, Your Honor. May it please the Court, the Justices Council. My name is Cameron Blair with the law firm Wolf, Williams & Austin on behalf of the claimant in this case, Mr. Richard Estadillo. And I think the crux here, where I want to begin with this, is employers' argument that its experts are being required to explain away an impairment is not correct. Rather, in this case, the administrative law judge acted within her discretion in finding that Drs. Green and Haber provided a better-reasoned explanation for the impairment present, including the residual post-bronchodilator irreversible impairment, and that employers' experts, Drs. Beshida and Saldivar, failed to do so. While the physicians may indeed be relying on the same data set, claimant's position is that the ALJ and BRB were correct in crediting Drs. Haber and Green over Drs. Beshida and Saldivar. And I wanted to turn the Court's attention to the nature of the residual impairment. If one looks to the pulmonary function testing from August 4, 2021, which is the most recent testing, Joint Appendix 96, claimant does concede there is an improvement post-bronchodilator, but even in the post-bronchodilator testing, the forced expiratory volume, the FEV, remains at 65%, which is a significantly abnormal figure, as 80% is generally considered the threshold for an abnormal study. The FVC is 78% post-bronchodilator, another abnormal figure. The ratio is 62%, indicative of residual obstruction. The fact that the impairment post-bronchodilator is non-disabling is not necessarily relevant to the issue of legal pneumoconiosis. In fact, the residual irreversible impairment present on the post-bronchodilator testing actually lends credence to claimant's position that even if there is an asthmatic component to the impairment, the irreversible impairment that remains post-bronchodilator, as explained by Dr. Green in his report, is the result of this individual's, I believe, 11.9 years of credited coal mine dust exposure. And just to reiterate the residual impairment here and the testing from the Department of Labor's evaluation, Dr. Haber, from January of 2021, the post-bronchodilator pulmonary function measurements resulted in an FEV1 of 60%, an FVC of 70%, and a ratio of 60%. And, again, claimant would note, while these measurements are not necessarily disabling on the numbers, I would point to 718.204. I'm sorry to interrupt you, but you said twice that it doesn't necessarily need to be disabling. What do you mean by that? I mean the fact that we do not have disabling impairment on the post-bronchodilator testing does not preclude a finding of legal pneumoconiosis. In fact, that supports claimant's position that this residual impairment that remains even after bronchodilator treatment is related to coal mine dust exposure. And this is particularly true in this case, as Mr. Estudillo is a nonsmoker, and the only explanation for the irreversible component of the impairment would be the 12 years of coal mine dust exposure. And another interesting point. Do you contest that, well, I guess there was a dispute as to whether or not the claimant in this case had asthma? I think, yes, there is a reversible component to the impairment. Which suggests asthma? That does suggest asthma. Even in the presence of asthma, that does not preclude a finding of legal pneumoconiosis. In fact, asthma under the preamble to the regulations, asthma falls under the terms that envelop chronic obstructive pulmonary disease as outlined in 718.201. And even in Dr. Bashida's report, and I believe Dr. Zaldivar's, they concede to the existence, not in this case, they concede to the existence of a condition known as occupational asthma, which generally is considered to be when these asthmatic symptoms manifest during an individual's employment. And if you look at the, if you turn to the hearing transcript here, the joint appendix, Mr. Estudillo, that's joint appendix 50, I believe, Mr. Estudillo complained of respiratory symptoms, including cough, while he was working. He testified to this at the final hearing in this case. He testified to having pulmonary symptoms during his employment. And while he may not have missed time for work due to this, which is the criteria that Dr. Bashida needs to see occupational pneumoconiosis, this position tends to ignore the reality that individuals need to work and coal miners tend to work through their issues. And in this case, our position is that Judge Epeda acted well within her discretion in crediting claimants' experts, including Dr. Green. Dr. Green, as noted, reviewed the entirety of the evidence of record. He based his opinions on the diagnostic testing, as well as the work history and social history. Specifically, Dr. Green noted the interplay of asthma and COPD, outlining asthma-COPD overlap syndrome, and that's what we have here. We have a multifaceted impairment. There's a component of asthma, yes, which may be occupationally related, given Mr. Estudillo's complaints of respiratory issues during his employment. Notwithstanding this, we're still left with this significant impairment on all of the post-bronchodilator testing that could possibly be disabling on its own, even if not meeting the standards. This begs the question of whether this individual will be able to perform his job duties based on even the post-bronchodilator results. And again, here we have absolutely no smoking history. Can I ask you a question about a statement that your colleague on the other side relies on to show that the ALJ improperly shifted the burden? He mentions that the ALJ said that both of the employer's doctors failed to consider whether the asthma or obstruction were substantially aggravated by the coal miner's dust exposure or whether it significantly contributed to his disease. And he suggests that that's shifting the burden. Do you agree with that? No, that is not shifting the burden. That's simply the court, in its discretion, requiring a well-reasoned explanation as to the etiology of this irreversible obstructive impairment. I mean, it might be a shift in the burden in the absence of expert evidence suggesting legal pneumoconiosis and a disabling impairment. You've got the claimant's experts coming in and explaining why this miner is disabled as a result of coal mining experience, 11-plus years, as you pointed out. And it seems logical then at that point for the employer, if they want to prevail, to rebut the claimant's evidence, right? Well, yes. That is just a . . . I would say that doesn't shift any burden that the employer has to disprove anything. That's simply the administrative law judge exercising her discretion in choosing which physicians' experts offering opinions are providing the opinions that are the best-reasoned, most consistent with the objective testing, and consistent with the language present in the regulations. This case is a little bit unusual because you don't have the 15-year presumption, which, as a result, requires the claimant to do more in presenting evidence. So does that at all change the analysis? What changes the analysis from a base level? Instead of asking the question whether the employer has established that no part of the impairment is due to dust exposure, claimant admittedly has the burden of establishing all elements of entitlement with less than 15 years. In this case, we would submit that the administrative law judge and, in turn, the Benefits Review Board exercised this permitted discretion and satisfied the APA requirements in finding that Drs. Green and Haber provided the best-reasoned opinions, particularly Dr. Green's thorough explanation of why, even assuming an asthmatic component to this impairment, the fact that there remains significant irreversible impairment post-Bronco dilator leads to a finding that this individual's totally disabling impairment was substantially contributed to by his 11.9 credited years of coal mine dust exposure. All right. Thank you, Counsel. Thank you, Your Honor. Mr. Casserly. Good morning, and may it please the Court. My name is Dave Casserly. I'm representing the federal respondent here. The Director just has a few things to address in this case that I'll go through. First, at the outset, Petitioner does not challenge our regulation, which I believe Mr. Blair cited, which is at 20 CFR 718-204, which states that an impairment of any type constitutes legal pneumoconiosis as long as it materially worsens a claimant's total disability. In other words, if it has an impact of some substantial measurable amount on a claimant, that's enough if the claimant is totally disabled, otherwise, from a pulmonary perspective. Here, that's exactly what happened, and the fact that claimant's other disability may or may not have been asthma has no bearing on that. I also want to address quickly Dr. Bushida's opinion. Can I stop you for a second? But clearly, the requirement has to be total disability, right? Yes. And then the question is, at that point, it doesn't really matter how you divide up the causation with respect to disability. If the time spent in the mines is a contributing factor to that disability, that's enough. Correct, Your Honor. That's the analysis. First, you determine total disability. If there is total disability from a pulmonary perspective, then you look at the causes of that. And if coal mine dust exposure was a substantially contributing factor, then yes, the miner is totally disabled from a pulmonary perspective. I don't think there's any dispute as to total disability in this case. Maybe there is. I guess we'll ask your colleague on the other side. No, that's correct, Your Honor. There's no dispute that a claimant here is totally disabled from a pulmonary perspective. I do want to address Dr. Beshida's opinion. You heard in the opening argument and both in the briefing here that Dr. Beshida, from the other side, did not actually make the findings that the board affirmed. Or, sorry, the judge did not make the findings as to Dr. Beshida's credibility that the board affirmed. In other words, but that's not the case. The board addressed that in several different ways. First of all, the judge discredited Dr. Beshida's report for being equivocal about whether and the effect of a residual impairment. There's not really any difference between discrediting a report for being equivocal about that fact and for failing to address that fact. The second issue, though, is that after addressing Dr. Beshida's report, the ALJ went into length about Dr. Green's rebuttal of that report and credited Dr. Green's explanation that that report was not credible because it didn't explain that asthma could only be a partial cause of the disability at issue here. Is that shifting the burden improperly? Not at all, Your Honor. This is another expert on the other side making that opinion, and so it's the judge weighing evidence and using one doctor's opinion to determine the credibility of another doctor's. That's exactly what they're supposed to do in every case. What would be shifting the burden is if there were no opinions on the other side, right, and the judge discredited all of the experts. You can't award benefits if that's the case. But here, using one side's expert opinion to help the analysis of the other side's is not a burden-shifting issue. In those two ways, the judge directly addressed whether Dr. Beshida considered the reversibility of the claimant's total disability and found that Dr. Beshida did not sufficiently do so. So backing up a bit, if the court were to agree with the petitioner's argument here, that would require requiring ALJs to credit or to not discredit opinions, right, not have the discretion to do so. If those opinions say this claimant has asthma, period, and do not address whether there's a residual impairment or the effects of that impairment. And we just think that is not consistent with the regulations that say that if there's a residual impairment, if it's a substantially contributing cause to the claimant's disability, then the claimant is totally disabled by pneumoconiosis within the meaning of the statute. Do you have anything else? No, Your Honor. If the court has no further questions. Thank you very much.  All right, thank you, Your Honors. This is the approach that I'm taking. It was identified 2004 and actually before that in 2003. In Consolidation Cole v. Angelilli, this court, the Fourth Circuit, said that an improvement in pulmonary function testing undermines a diagnosis of pneumoconiosis because the improvement is a, quote, result contrary to the irreversible nature of pneumoconiosis. That's what my experts were talking about. Pardon me. That's what the employer's experts were addressing here. It was unacceptable and would never be accepted by the Benefits Review Board. There's a lot of discussion about burden shifting, which I think is a very important issue, and it's fully briefed. But I want to identify one fact here before your honors that unmistakably demonstrates that the Benefits Review Board was engaging in improper burden shifting. In addition to misconstruing the employer's medical experts, the Benefits Review Board claimed that the employer's experts have a duty to explain why there's no contribution from coal mine dust exposure. And in order to get this duty to impose on the employer, the Benefits Review Board at Joint Appendix 209 cites to Westmoreland Coal Company v. Stallard, decided in 2017 by this court. That is a 15-year presumption case, your honors. Can I just, I really am struggling with the burden shifting part here, and I just want you to, I bet you can explain this to me. So if there were a 15-year presumption and then the claimant sort of didn't put in any evidence, it would still be on the company to kind of rule out that the disability was occupationally related. In this case, the plaintiff or the claimant comes forward with expert opinion, saying that he has legal pneumoconiosis. And then the ALJ says the company's doctors didn't rebut that, the company's doctors didn't rebut that, in part because they didn't discuss whether there was a contribution from coal dust. On your view, if it's not a presumption case and the claimant comes forward with evidence, expert evidence that would meet its burden, is the ALJ, the company doesn't have to rebut that evidence? I guess I'm not understanding. Does the company automatically win? I'm out of time. Would you allow me to . . .  Okay. Now, in the scenario that you're describing, Judge Harris, there would be the traditional weighing of evidence. Right. And how is this not that? This is not that because the administrative law judge imposed an additional duty on the employer's experts to explain why coal dust exposure is not a contributing factor. Right, because the claimant's doctors explained why it was. And so I guess I'm just not understanding. If the claimant comes forward with evidence that coal dust is a contributing factor, and if you can't shift the burden at that point to the employer to rebut that evidence, then does the employer just automatically win? I'm still out of time. No, no. Go ahead. Okay. All right. You can talk as long as Judge Harris is talking. Okay. Thank you. These are very important questions, obviously, but the phrasing is causing me serious concern because we're talking about shifting burdens and requiring the employer to explain. In this case, make no mistake, the employer's experts did explain why this gentleman has asthma not related to coal dust exposure. The administrative law judge won't accept that unless the employer's experts meet an additional burden, and this is critical. The Benefits Review Board, in their decision, Joint Appendix 209, they say that the employer has this additional or has the obligation to explain why there's not a contribution. Where do they get this obligation to explain from a 15-year presumption case that has no applicability to this? Well, perhaps they miscited the case, but that principle still remains as Judge Harris has described it, right? Once the claimant comes forward with evidence to prove that coal mining dust was a contributing factor to the claimant's impairment, then why isn't, at that point, why isn't it the employer's burden to come forward with its own evidence? Which you did, and then it's ultimately up to the ALJ to decide who's got the better of the battle of the experts. I would not be as charitable to the Benefits Review Board and say that they miscited. It was a 2017 case. They're importing the rebuttal burden. If it's true, as Your Honor said, they were wanting to import this other burden to explain from a different case, they did it wrong, and they've identified a 15-year presumption case. That is significant and problematic, and that demonstrates that they're bringing in, the Benefits Review Board, the Administrative Law Judges are bringing in this duty to explain, an explanation that they will never accept, but they're bringing it in from these 15-year presumption cases because all of those cases talk about the employer's burden and obligation to explain. Even my friends on the other side, they've identified to claim that there's this duty to explain. They cite 15-year presumption cases. That's not a mistake. That's where this duty is coming from. That is the concern. All right. Thank you very much. Thank you all. We appreciate the arguments of counsel in this matter. We'll come down and greet you and move on to our second case.
judges: Albert Diaz, Pamela A. Harris, DeAndrea Gist Benjamin